**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 28, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Tiffany F. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-02447-CDA

Dear Counsel:

On July 25, 2025, Plaintiff Tiffany F. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2025). I have considered the record in this case and the parties' briefs. ECFs 8, 12, 16, 19. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold the decision of the SSA if it is supported by substantial evidence and the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on March 7, 2022, alleging a disability onset of August 13, 2021. Tr. 23. Plaintiff's claims were denied initially and on reconsideration. *Id.* On April 15, 2024, an Administrative Law Judge ("ALJ") held a hearing. *Id.* Following the hearing, on June 24, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 24. The Appeals Council denied Plaintiff's request for review, Tr. 1, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

[1] 42 U.S.C. §§ 301 et seq.

The ALJ must evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 13, 2021, the alleged onset date." Tr. 25. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "hearing loss, seizure disorder, mood disorder, attention deficit hyperactivity disorder, substance use disorder (alcohol and drugs)[.]" Tr. 26. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 26. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must avoid even moderate exposure to hazards, must avoid concentrated exposure to noise at the 4/5 and 5/5 levels, can do no telephone work, is limited to simple tasks, no tandem work, no assembly line, no hourly quota, no significant interaction general public, occasional interaction with supervisors and coworkers, no more than occasional changes of setting, processes and tools.

Tr. 28. The ALJ determined that Plaintiff has no past relevant work but could perform other jobs that existed in significant numbers in the national economy, such as package sorter (DOT[2] #222.687-022), mailroom clerk (DOT #209.687-026), or office helper (DOT #239.567-010). Tr. 32-33. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 33.

## III. <u>LEGAL STANDARD</u>

The Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is

---

[2] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

"more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

Plaintiff argues that the ALJ's RFC decision is unreviewable and unsupported by substantial evidence. ECF 12, at 7. Plaintiff maintains that the ALJ failed to employ the proper legal standards in his RFC assessment because they (1) did not employ a function-by-function analysis to determine that "Plaintiff retained the functional capacity to meet the exertional requirements of 'light work[]'" with certain limitations and (2) erroneously used a symptoms-based analysis to guide his narrative discussion. *Id*. at 7-18. Defendant argues that, because the ALJ provided sufficient rationale for his decision after considering Plaintiff's treatment history, normal consultative evaluation results, and the state agency medical experts' assessments, the findings and determinations are supported by substantial evidence. ECF 16, at 1-2.

After carefully reviewing the record, the Court concludes that the ALJ did not err in assessing Plaintiff's RFC. A claimant's RFC is an assessment of "the most [a claimant] can do" in a work setting, despite any physical and mental limitations caused by their "impairment(s), and any related symptoms, such as pain," that may affect their work-related abilities. 20 C.F.R. §404.1545(a)(1) (2012). According to Social Security Ruling ("SSR") 96-8p, "[an] RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). In other words, an RFC assesses "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.*

This determination "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945."[3] *Id*. "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work of which he believes the claimant to be capable." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (internal quotation marks and citation omitted). Additionally, the ALJ must

[3] *See* 20 C.F.R. §404.1545(b)—(c) (2012) ("When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis . . . such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions[.] . . . When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis . . . such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting[.]").

provide a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" and "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Therefore, a proper RFC analysis requires an ALJ to identify supporting evidence and build a logical bridge from that evidence to their conclusions. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

In reviewing a disability benefits determination, a federal court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). If conflicting evidence allows reasonable minds to differ, the Court defers to the Commissioner's decision. *Id.* (citing *Johnson*, 434 F.3d at 653). Moreover, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Plaintiff relies on SSR 96-8p and 20 C.F.R. §404.1545(b)-(c) to argue that before determining the appropriate exertional level, an ALJ must provide a narrative discussion assessing an individual's capacity to perform substantially each exertional and non-exertional function. ECF 12, at 9-11. She contends that these provisions also require a description of the maximum amount of each work-related activity the individual can perform based on the evidence. *Id.* Plaintiff posits that because the Code of Federal Regulations defines the exertional requirements of "light work," the ALJ's RFC limitation to light work presupposes her ability to perform such functions because the ALJ did not evaluate Plaintiff's capacities function by function *Id.* at 11-12.

However, in *Mascio v. Colvin*, the Fourth Circuit rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis, finding it "inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The Fourth Circuit emphasized that remand is required only "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citing *Cichocki*, 729 F.3d at 177)

In their decision, the ALJ cites and relies on evidence from Plaintiff's function reports, testimony, medical history, state agency examination reports, and physician disability forms in making their findings. Tr. 26-32. The ALJ summarizes the evidence from these reports before articulating a conclusion and the reasoning for that conclusion. Tr. 26-32. The ALJ discusses Plaintiff's impairments, such as her substance abuse disorder, seizure disorder, mood disorder, and attention deficit hyperactivity disorder. Tr. 29-30. The ALJ also discusses Plaintiff's various symptoms[4] and work-related functions as reflected by the evidence, including her anxiety, focus

[4] When considering a claimant's symptoms, the ALJ must first review the medical evidence for the existence of one or more [medically determinable impairment(s) (MDIs)] resulting from anatomical, physiological, or psychological abnormalities determine whether the individual's MDI(s) could reasonably produce their reported symptom(s). Second, once the medical evidence

and concentration, interactions with other people, ability to walk, ability to do chores, ability to climb, hearing loss, ability to follow conversations, affect, ability to sleep, ability to ambulate, and ability to problem solve. Tr. 28-30. In their opinion, the ALJ highlighted whether Plaintiff experienced difficulty with any of the above symptoms and functions and for how long she could perform certain functions, if applicable. Tr. 28-30. While there was not an explicit function-by-function analysis, the ALJ provided a narrative discussion that enables the Court to meaningfully review their analysis to determine whether substantial evidence supports it. *See Shinaberry v. Saul*, 952 F.3d 113, 123-24 (4th Cir. 2020) (finding ALJ's decision conclusive in judicial review where she built a logical bridge from the evidence to her conclusion); *Britt v. Saul*, 860 F. App'x 256, 261 (4th Cir. 2021) (finding ALJ's decision did not frustrate meaningful review where he adequately explained his reasons for imposing certain mental and physical limitations); *Owens v. Kijakazi*, No. 22-1273, 2023 WL 2344224, at *4 (4th Cir. Mar. 3, 2023) (per curiam) (finding ALJ's decision permitted meaningful judicial review where ALJ explained rationale and drew logical connections to the evidence). Therefore, the ALJ conducted a proper RFC analysis. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) ("a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion.").

Nevertheless, Plaintiff insists that the ALJ should have explained how they determined an RFC limitation of "light work" when state agency examinations reported that Plaintiff had "no exertional limitations." ECF 19, at 3. Plaintiff argues that, per 20 C.F.R §§ 404.1567(b), 416.967(b), and SSR 96-9p, light work has exertional requirements. ECF 12, at 12. Therefore, she avers, the ALJ's findings are non-exertional and cannot support a finding of light work. *Id.* Defendant responds that "Plaintiff did not allege *any* physical limitation when she applied for benefits or testified during the administrative hearing." ECF 16, at 1; Tr. 45-53, 280. Though this specific fact does not appear in the ALJ's decision, Plaintiff does not deny it. ECF 19, at 3. The ALJ determines in his decision that the state agency findings are "partially persuasive because the updated record suggests greater and additional limitations[,]" and that the updated record "supports limitation to light work, rather than no exertional limitations[.]" Tr. 31.

Because SSA regulations require an explanation for "any material inconsistencies or ambiguities in the evidence[,]" errors that would "frustrate meaningful judicial review" and make remand "appropriate" include conflicting evidence in the record regarding a claimant's exertional capacities and the palpable harm resulting from such evidence. SSR 96-8p, 1996 WL 374184, at *7; *Mascio*, 780 F.3d at 636. In their decision, the ALJ discusses in depth symptoms disclosed by the Plaintiff in her functions reports; the results from her audiological, psychiatric, and consultative examinations; and other evidence. Tr. 26-32. The ALJ also explains that they found the State agency's medical consultants' opinions "generally persuasive because they are consistent with the

---

establishes one or more MDIs that could reasonably be expected to produce the individual's symptom(s), the adjudicator must consider the degree to which the intensity, persistence, and limiting effects of the individual's symptom(s) are consistent with and supported by the objective signs, laboratory findings, and other medical and non-medical evidence; while recognizing that some individuals experience symptoms and related functional limitations differently, even when their MDI(s) and the case evidence are similar. *See* SSR 16-3p.

medical record as a whole[.]" Tr. 32.

While a claimant need not convince the Court that a particular conclusion is proper or required, Plaintiff bears the burden to show that a more in-depth analysis, such as the one they suggest, would have led to a different outcome. *Shinseki*, 556 U.S. at 409; *see also Turner v. Colvin*, No. 13-0761, 2015 WL 502082, at *11 (M.D.N.C. Feb. 5, 2015) ("Plaintiff has not made any attempt to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in the case and, thus, such harmless error does not warrant remand."). Plaintiff has not made this attempt. In fact, Plaintiff says she is "not trying to say that the record compelled a finding of disability or that the Court should second guess the agency's fact-finding." ECF 19, at 4-5. This error does not warrant remand and is thus "harmless" for purposes of this appeal, because Plaintiff has not met her burden to show that a more complete analysis would have led to a different outcome. *Shinseki*, 556 U.S. at 409; *Turner*, 2015 WL 502082, at *11.

As a final matter, Plaintiff argues that the ALJ failed to employ proper legal standards when he used a symptoms-based evaluation—rather than a function-by-function methodology—when determining her RFC. ECF 12, at 13-14. Plaintiff relies on the Fourth Circuit's ruling in *Dowling* to argue that the ALJ erred. Plaintiff contends that although her symptoms are relevant to the RFC determination, the assessment is a "separate and distinct inquiry from a symptom evaluation" and cannot be used as a substitute for a function-by-function analysis. ECF 12, at 15.

In *Dowling*, the Fourth Circuit found that "the ALJ's RFC determination was based entirely on SSRs 96-7p and 16-3p, which set out the process ALJs use to 'evaluate the intensity and persistence of [a claimant's] symptoms' and determine 'the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [] record.'" 986 F.3d at 387 (quoting SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017)) (alterations in original). The *Dowling* panel emphasized that the ALJ did not cite 20 C.F.R. § 416.945 or SSR 96-8p, the provisions explaining how to properly evaluate RFC. *Id.* at 387-88. As a result, the Fourth Circuit determined that the ALJ applied the incorrect framework and failed to "indicate that [their] RFC assessment was rooted in a function-by-function analysis of how [the claimant's] impairments impacted her ability to work." *Id.* at 387.

Here, however, the ALJ did not commit such an error. The ALJ articulated their reliance on the proper regulations: 20 C.F.R. § 404.1529 and § 416.929, along with SSR 16-3p, for the symptoms analysis, and 20 C.F.R. § 404.1567(b) and § 416.967(b) for the RFC determination. Tr. 28. Furthermore, the ALJ appropriately evaluated the intensity and persistence of Plaintiff's symptoms in tandem with the objective medical evidence in her record when determining her RFC. *See* Tr. 28-29. This evidence included the Plaintiff's treatment records, examination conclusions, and function reports. Tr. 26-32. Even though Plaintiff did not allege any physical impairments, the ALJ nevertheless considered her ability to perform light work after reviewing her relevant physical and mental functions and symptoms. *Id.* Despite Plaintiff's arguments that the ALJ supplemented his function-by-function analysis with a symptoms-based analysis, ECF 12, at 15, it is clear that the ALJ did not focus their analysis solely on the nature of Plaintiff's symptoms. Tr. 26-32.

Demonstrating the flaws in Plaintiff's argument, the Fourth Circuit has explained that the error in *Dowling* was the ALJ's failure to apply the correct framework and assess a "critically relevant" function. *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023). That failure driving *Dowling*'s outcome does not exist here. As noted above, the ALJ cited and relied on evidence in the record regarding relevant functions of Plaintiff's physical capacity even though she did not allege physical limitations and regarding mental functions relevant to the RFC determination. The ALJ's evaluation considered relevant functions, subjective symptoms, and medical records and assessments. The summation of *Delesline-Meggett*'s analysis of a similar challenge carries equal force here: "This case is unlike *Dowling*, where the ALJ not only failed to perform a function-by-function analysis but also failed to address a 'critically relevant' function . . . . There is no corresponding failure here." *Delesline-Meggett*, 2023 WL 8230802, at *1 (citation omitted). Therefore, remand on that basis would, likewise, be inappropriate here.

In sum, the ALJ employed proper legal standards when evaluating Plaintiff's symptoms to determine Plaintiff's RFC. Therefore, for all the above reasons, substantial evidence supports the ALJ's decision.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's decision is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge